Good morning. May it please the court, Mari Matsumoto together with co-counsel Juana Miron for the petitioner, Minor Sosa-Santiago, who is here in the courtroom today. The petitioner raises several different issues in his petition for review, but I'd really like to focus my argument today with respect to the denial of his motion to remand based on ineffective assistance of counsel, because that's where the due process violation in this case is the most egregious. The petitioner filed his motion to remand before the board on the basis of ineffective assistance of counsel and appended to his motion a sworn declaration in which he averred that his prior counsel had misadvised him as to his eligibility for relief. His prior counsel informed him that he was not eligible for asylum due to the one-year bar, failed to discuss withholding of removal under 8 U.S.C. 1231 B.3 with him entirely, and told him that his sole application for relief was under the Convention Against Torture. This was clear misadvice. The petitioner further averred that he relied on this advice in waiving his other applications for relief before the immigration judge. And what's important here, and this is perhaps the single most important finding by the immigration judge with respect to the waiver, is that he found, and this is at the bottom of page 186 in the record, he found that the waiver was based on the advice of counsel. That's at the bottom of 186. The Board of Immigration Appeals here disregarded the immigration judge's finding that the waiver had been based on the advice of legal counsel, did not accord appropriate weight to the petitioner's sworn declaration stating that he had been misadvised by his counsel and relied on this to his detriment, and in fact failed to apply the proper legal analysis with respect to an effective assistance of counsel claim. And the correct legal analysis... Counsel, this is Judge Graber. There's one issue I'd appreciate your addressing with regard to the IAC, and that is the issue of prejudice. Your client was able to remain in Guatemala for some eight years without any harm to him and without any threats to him, and in view of that, I'm wondering what is the likelihood of prejudice with regard to either asylum or withholding of removal? Your Honor, the immigration judge found correctly that he had not been tortured during those eight years, but the immigration judge's finding that he had remained there unharmed for those eight years is clearly not supported by substantial evidence, and it's not supported by this court's case law either. The petitioner... Well, I'd like you to assume for the sake of my court, and that he was not harmed or threatened for that period of time. And again, one of the requirements, as I understand it, for a successful IAC claim is a showing of prejudice, and that's my concern, I think, with your argument. So I'd appreciate if you could elaborate. Yes, a couple of different issues with respect to that. One is that in an IAC claim, where the petitioner forewent a claim or a right entirely due to counsel's error, a presumption of prejudice arises, and that presumption becomes unrebuttable where a petitioner shows plausible grounds for relief. So all the petitioner was required here was to show a plausible case for withholding of the money. If he had a plausible case, would he be entitled to relief? No, he would not. But here the record compels a contrary conclusion that, in fact, he had established plausible eligibility for withholding of the money. If he had a plausible case, is the remedy in this case, were you to prevail, would be a remand for further fact findings, including possible further hearings? Is that what it would be? What would the remedy be? With respect to withholding of removal, yes. The appropriate remedy with respect to the denial of the motion to remand would be a remand from this court for further fact finding as to his eligibility for withholding of removal because he never had an opportunity to present that claim before the immigration judge. I guess Judge Graber's problem then is that if that happened, presumably that the he was not, in fact, in danger during that period and wouldn't be harmed if he returned. Period, the end. I've already found that. Well, I think it's important to look at what withholding of removal requires here. Where a petitioner can show past persecution on the basis of a protected ground. You switched the burden. So in other words, the reason you think it would be different is because you'd have a burden switch. Well, and also the immigration judge in this case never had an opportunity to make a finding about whether or not there had been past persecution because that's not an issue with respect to the claim. The claimant. Well, that's true. But the question is, what would that have made in the ultimate difference? And I think your answer is it could have because it would have entailed a burden switch. So his prior finding might have been different. Yes. In other words, his prior finding that there was, in fact, no injury could have been otherwise or future injury after that could have been different. Is that basically what you're saying? Yes. In fact, in this case, the facts show that the petitioner had, in fact, experienced past persecution, that he hadn't been unharmed in those eight years. His family had been threatened with death. His father had been murdered when he was 13 years old. And that should be a consideration taken into account by the immigration judge in assessing past persecution. And this court has found that where a family is forcibly displaced from their home under threat of harm, and this is the Nezhebek v. Ashercroft, that also constitutes past persecution. And all of those things occurred during those eight years in which he was in Guatemala. OK, but once you establish past persecution, you still have to under the regulations, this presumption arises of future persecution. There's a presumption and then there would be a burden shift. That's what I was saying before. So while the DHS could come in and try to demonstrate that because he was there for eight years after all this, he had no reasonable fear of future persecution, it would be their burden at that point. Is that right? Correct. It would be their burden at that point to come forward with evidence showing a fundamental change in circumstances or the reasonableness of internal relocation to avoid future persecution under all circumstances. And the government in this case only submitted 2009 country conditions report, which, if anything, support a finding that there had not been a And all that requires, though, your going in assumption that there was past persecution. The immigration judge in this case never reached that issue because it wasn't before him. The immigration judge did not have to make a finding about whether there had been past persecution because that's not a requirement for Convention Against Torture Relief. The question there was whether or not there was a The record is what the record is. That's correct. The immigration judge's finding that he was unharmed for eight years is in the record, but no finding with respect to past persecution. And as I've stated, we believe that the finding that there had not been harmed was not supported by substantial evidence. I'd like to reserve my remaining time for rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Michael Heiss on behalf of the Respondent, the Attorney General of the United States. Court should deny this petition for review for two main reasons. First, substantial evidence supports the agency's decision to deny petitioner's application for protection under the Convention Against Torture. Is that even an issue particularly? I don't think so at this point. We don't seem to have reached that. It wasn't raised? It was raised in the brief, not in the argument. Kind of. Not really. Turning to the ineffective assistance of counsel claim, as the Court is consistently correctly observing, this case is about prejudice. It's whether or not there's any reason to send this case back. Let me just clarify that. If you're saying the case is about prejudice, then are you agreeing that by telling him that he didn't have a withholding claim when, in fact, a family as a social group had already been established and when that was pretty much what he was claiming, was ineffective? Are you agreeing to that? No, Your Honor. If that was the case, if the Court assumes arguendo that that was indeed ineffective assistance, nonetheless, what we have to address is whether or not it is meaningful to send this case back to the agency under the facts. As Judge Graber said, the record is what it is. The record here does not establish a viable withholding of removal claim. Whether or not counsel is ineffective... How does it not show a viable claim given that we have a situation here where there are predicate facts that would have supported a presumption in favor of the petitioner? Then that would have placed the onus on the government to rebut that. Well, there's several circumstances here that would, should the government be put to that burden, that would rebut that presumption. As the Court has noted, Chisholm was able to live safely in Guatemala unharmed for eight years. He was able to safely relocate within Guatemala during that time. Wasn't he basically not going out of the house? Isn't that what he says? He said he went to school. He said he was able to essentially... He went out of the house, went to school, came back and stayed in the house. Yes. In addition to that consideration, this Court has consistently noted the passage of time since the alleged past persecutory event. Easy for me to say. In Guy versus INS, 11 years had passed since the last incident of harm. In Prasad, it was eight years since the prior incident of harm. These things undercut against... And you can find cases to the contrary too, couldn't you? Not to this substantial amount of time. What we have here is the murder of his father was 20 years ago. And then you have eight years subsequent to that where he's living in Guatemala unharmed, maybe facing threats that are against his family. But then there's an additional 13 years after that. Counsel, this is Judge Graber. The thing that troubles me about your side of the case is that the BIA's decision to deny remand was primarily procedural. And that's... I mean, there is an alternative holding, of course, but the procedural ruling seems wrong to me, just speaking only for myself. And the second alternative holding isn't really about the thing that we're talking about either. It's about whether the waiver was voluntary, knowing and intelligent, the waiver of the other forms of relief. So how is it we can have the discussion we're having? I know I started it, but is that a permissible thing for us to do? I believe that the board reached that issue in footnote one. It's administrative record page three. The court notes the evidence that petitioner offered in an attempt to establish a prima facie case for withholding of removal. And it said this additional evidence does not merit remand. With regards to... If I understand your position, it's really that there are three holdings. Number one, the Lozada requirements weren't met. Number two, even if the procedure was followed correctly, this was a knowing waiver. And number three, even if all the foregoing is false, there's no prejudice because he has no claim. Precisely, Your Honor. Of course, whenever there's an ineffective assistance of counsel claim, prejudice is the ultimate question. Whether or not the court... Strictly speaking, the footnote is not about this either. It's about whether he was more likely or not to be tortured with or with that buyer with the consent of the Guatemalan government. But it's all about the same facts, Your Honor. It's all the same issue. But it's not the same finding that would be necessary in a withholding case, right? Because it's not about persecution. It's about torture. And it's about buyer with the consent or acquiescence of the Guatemalan government rather than the somewhat looser standard in withholding. So it's not the right finding. I wouldn't agree that it's necessarily a looser standard with withholding torture. Well, it's the unable or unwilling standard rather than consent or acquiescence. Yes. They're similar and dissimilar in their own way. What it's about is, in general, immigration laws or at least the availability of removal, relief, and protection is forward-looking. The agency is concerned about what is going to happen to the individual should they go back. So all of these facts relate to that. All the facts relate to... They do relate to it, but this finding is not a finding about the relevant issue. If Your Honor doesn't feel that specific enough, ultimately the court in reviewing an ineffective assistance of counsel claim is essentially reviewing it de novo in any event. And it's the question of prejudice. It's whether or not this record establishes that the alien suffered prejudice as a result of counsel's allegedly ineffective assistance. I would like to back into that, however, to argue that counsel was not necessarily ineffective regarding the waiver. There's a case in this court, Molina Estrada is nearly on all fours with this case. The guerrillas in Guatemala bombed the family's home. The petitioner was actually injured in that case, but the father was targeted because of his military service. There was never a specific threat against that petitioner, and Judge Graber was actually on the panel in that case. The court held that the alien was not the intended victim, and thus there was no reason for withholding a removal based on a particular social group. This is nearly identical to that. While the father and the brother were targeted, it was because they were involved in the military. They were associated with the police, and they had connections to these individuals based on military service. I thought that there was some evidence that, first of all, that other of the people involved in this incident, other of the police, their whole families were killed, and also that there was a threat to the whole family. There were vague threats to the family, but the people that were actually harmed were the actual police officers involved. I thought the record demonstrated that in at least one instance that the whole police officer's family was killed. If I remember the incident correctly, Your Honor is discussing, I believe it was just the policeman that was part of the arresting team. If I'm mistaken about that... And his family was also killed, as I recall. If that's the case, I have misread the record then. Ultimately, the question here is whether or not counsel believed that his client had a viable particular social group claim based on his family. On these facts, he didn't believe so, and he so advised his client. He made a conscious decision... We don't really know whether that's what he believed or whether he didn't know that the family counted as a social group because nobody could find the guy afterwards. Well, that's actually technically incorrect. I believe Petitioner submitted to this court with a motion to hold this case in advance some information regarding a motion to reopen that's pending before the board on this point, providing a letter from prior counsel that actually predates... Maybe now he's found it, but at the time of this, they couldn't find him. There was an affidavit saying they couldn't find him. Well, that's actually incorrect. The letter that he submitted with his motion to reopen predates the board's decision. But doesn't that letter...  I believe it was filed two months ago, Your Honor, so given the board's typical timeframe, I would expect that has not yet been adjudicated. I checked it the other day, and it had not yet been decided. I didn't understand what you said. What difference does it make what was before the board opinion? I thought that this affidavit from the lawyer that she hadn't been able to get to reach the prior lawyer was part of the IAC submission to the BIA. Counsel could have... Of course it was before the... I'm sorry? Counsel could have submitted that letter prior to the board adjudicating the first decision. Then that could have saved us a little bit of trouble regarding the Lozada question. It's likely under those circumstances that the board will deny the motion to reopen, perhaps again procedurally, because of that delay. There's no real explanation for the five-year delay. But in any event, in that letter, counsel explains that he listened to his client. He took all the facts in and decided to pursue... I'm not talking about that. I'm saying that at the time before the board decision, didn't the current lawyer submit a declaration that she wasn't able to reach the original lawyer? That's correct, Your Honor. Right. And the board said that the statements by counsel are in evidence, which of course is wrong because this is evidence. It's a penalty of perjury and it's not a pertinent issue. Right. The point I'm... So they were just wrong about that at the time? Based on counsel not having provided the letter from prior counsel to the board in a timely manner. The board was only just recently given that document. But ultimately, it sets forth that counsel did discuss this matter with his client and chose to pursue what he believed to be the best option. It was a strategic decision to pursue convention against torture protection instead of withholding... What's a strategic decision to not do something? I mean, it's one thing to say, are they inconsistent in some fashion? What would justify a strategic decision of that kind? It's a decision to put forth what he believed to be the best case, what would accomplish the best result for his client. The difference between withholding and removal and cat protection, in terms of the ultimate result, there really isn't one. They're essentially the same. But convention against torture protection does not require establishing membership in a particular social group. I understand that, but... It doesn't require a nexus to a protected ground. But here, there was no question that the petitioner was a member of this social group. Well, there is, Your Honor. Based on this record, based on Melina Estrada, there's certainly a question of whether or not that was a viable particular social group claim. Counsel, before your time is up, I don't have a clock here with my phone. Well, it's time actually, isn't it? Yes. I wanted to ask one further question, if I may. And that is whether, in the government's view, this is a case that would benefit from mediation. No, Your Honor. This individual is a level two priority for removal. Okay. Thank you. Okay. Okay. Thank you very much, Your Honor. Thank you, Your Honor. Thank you for your argument. I'd like to address just a couple of points made by opposing counsel. First of all, it's the position of the government, apparently, that no harm was experienced by the rest of the family here, that the threats were directed only to the petitioner's father and brother. However, the petitioner testified, and his testimony was all deemed credible. At pages 40 and 41 in the record, that the threats kept happening to the date, and that they involved threats to his grandmother if she didn't inform the Army about the whereabouts of the family. And furthermore, the petitioner and his brother submitted sworn declarations. And at 227 in the record, the petitioner's declaration states that the drug traffickers his father had arrested had sworn to end his family line. So the threats here in this case clearly extend beyond the petitioner's father and his brother, but to the family in general. To the extent that these threats were made, but yet and still your client ended up living, if not peacefully, safely in this country for eight years, does that belie or kind of contradict or dilute that proposition? That would certainly have been a question for the immigration judge to weigh, but the immigration judge, once again, didn't have an opportunity to consider that, and whether or not the government had rebutted a presumption of future persecution, because that claim just wasn't before him at that time. Would the case have looked any different in terms of presentation had this gone forward as a waiver of removal case? Yes, I believe it would have, because the immigration judge would have been required to evaluate the government's evidence, in this case a 2009 country conditions report, to determine whether that evidence supported a finding of a fundamental change in circumstances or the reasonableness of internal relocation under all circumstances. And with respect to relocation, it requires an analysis of the petitioner's age, of his family ties in Guatemala, of his employment prospects throughout the country. It's not just a question about whether or not he was able to go to school as a minor in one particular town in Guatemala. And I also think it's important to keep in mind here that his father was murdered in Petén, which is in northeastern Guatemala. The family was threatened in Tiquizate, which is in southwestern Guatemala, and he relocated to Monjas, which is a town kind of in central Guatemala, and in all three places there was an army presence, and with respect to his family in Tiquizate and Monjas, the army came looking for the family. Can I just clarify one thing? I thought, or perhaps I'm misremembering, that if given, although there is a presumption, if there is a past persecution, you say that the only two things the government could prove would be a fundamental change in country conditions or the ability to relocate, but I thought there was simply still a general standard as to whether or not there was a reasonable fear of persecution in the future. Is that not true? I believe that... In other words, the government could, as I understand it, could attempt to overcome the presumption without proving either a fundamental change in country conditions or the ability to relocate. Is that right? That's correct. However, the immigration judge never reached that issue here. No, I understand that. You just kept saying what I understood to be otherwise. I'm just trying to clarify what it is that we're trying to see in the prejudice standard. Okay. Are we on the same page as to that now? Yes, yes. Okay, good. Thank you. All right. Thank you very much, and thank you both for your argument in this interesting case. Sosa-Santiago v. Lynch is submitted. The next case, McGee v. Malliar, has been submitted under briefs, and we'll go on to Nguyen v. Colton.
judges: Graber, Berzon, Curiel